UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAKEYSHA ANDRUS, ) | Case No. CV 05-279 AN |
| Plaintiff, ) | |
| ) | MEMORANDUM AND ORDER |
| v. ) | |
| JO ANNE B. BARNHART, ) COMMISSIONER OF THE SOCIAL ) SECURITY ADMINISTRATION, ) | |
| Defendant. ) | |

## I. INTRODUCTION

Pursuant to 42 U.S.C. § 405(g), Plaintiff is seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Both parties have consented to proceed before the Magistrate Judge. Pursuant to the Court's Case Management Order, the parties have filed a joint stipulation and request for an order summarily deciding issues concerning remand and/or immediate payment of benefits ("JS").

## II. BACKGROUND

Plaintiff was born on March 16, 1976, and was 27 years old at the time of the

administrative hearing. [Administrative Record ("AR") at 19, 24.] Plaintiff has a high school equivalency certificate and past work experience as a security guard. [AR at 20.]

Plaintiff filed applications for DIB and SSI in November 2001. [AR at 19.] Plaintiff claims that she has been disabled since October 29, 2001, due to psychotic episodes, auditory hallucinations, and depression. [AR at 20, 77.] Plaintiff's applications were denied at the initial and reconsideration levels. [AR at 62-64, 67-70.] At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on October 29, 2003. [AR at 34-59.] On November 26, 2003, the ALJ issued a decision denying Plaintiff's applications for benefits. [AR at 19-27.] When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. [AR at 7-9.] Plaintiff then commenced this action for judicial review.

## III. DISCUSSION

### A. Standard of Review

This Court must review the record as a whole and consider adverse as well as supporting evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Commissioner's final decision affirming an ALJ's decision that a claimant is not disabled must be upheld if the ALJ's findings are supported by substantial evidence in the record and the proper legal standards were applied. *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990). The harmless-error rule applies. *Id.* at 1131. "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). It is further defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also*, *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971). The ALJ is responsible for determining credibility, resolving conflicting testimony, resolving ambiguities, and "is entitled to draw inferences 'logically flowing from the evidence.'" *Andrews*, 53 F.3d at 1039; *Macri v. Chater*, 93 F.3d 540, 543-544 (9th Cir.

1  1996). Consequently, inferences and conclusions as the ALJ may reasonably draw from
2  the evidence are upheld. *See Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).
3  Likewise, an ALJ's findings are upheld where the evidence is susceptible of more than
4  one rational interpretation. *Andrews*, 53 F.3d at 1039-1040.

5  To collect DIB or SSI benefits, Plaintiff must suffer from a "disability." 42 U.S.C.
6  §§ 423(a)(1)(D); 1382(a). To be disabled within the meaning of the Act, a claimant must
7  suffer from a "medically determinable physical or mental impairment which can be
8  expected to result in death or which has lasted or can be expected to last for a continuous
9  period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A); 1382c(a)(3)(A). The
10 impairment must be of "such severity that [the claimant] is not only unable to do [his or
11 her] previous work but cannot, considering [his or her] age, education, and work
12 experience, engage in any other kind of substantial gainful work which exists in the
13 national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). The claimant has
14 the burden of showing that she or he is disabled. 42 U.S.C. §§ 423(d)(5);
15 1382c(a)(3)(H)(i); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990).

16 **B.  The Five-Step Sequential Analysis**

17 The Social Security Regulations use a five-step sequential analysis for making DIB
18 and SSI disability determinations. 20 C.F.R. §§ 404.1520, 416.920. The first step asks
19 whether the claimant is working. The second step asks whether the claimant has a
20 "severe" impairment, which is defined as an impairment which "significantly" -- more
21 than minimally -- limits an individual's ability to perform basic work activities. 20
22 C.F.R. §§ 404.1521, 416.921; *Bowen v. Yuckert*, 482 U.S. 137, 154, 107 S.Ct. 2287, 96
23 L.Ed.2d 119 (1987). However, this step two determination is "'a *de minimis* screening
24 device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th
25 Cir. 2001) (internal citations omitted). The third step asks whether the claimant has an
26 impairment which meets or equals the criteria of any impairment identified in the
27 appendix to the Social Security Regulations commonly referred to as the "Listings." *Id*.
28 The fourth and fifth steps require that the ALJ assess the claimant's residual

functional capacity ("RFC"). RFC is a determination of a claimant's remaining abilities to perform work. 20 C.F.R. §§ 404.1545, 416.945(a). In determining a claimant's physical limitations, the ALJ considers the claimant's ability to lift weight, sit-stand, push-pull, etc. 20 C.F.R. §§ 404.1545(b), 416.945(b). Mental, environmental and other limitations such as the ability to see and hear are also part of the RFC determination. 20 C.F.R. §§ 404.1545(c) and (d), 416.945(c) and (d). A claimant's limitations are categorized as either exertional or non-exertional; exertional limitations are those based upon strength considerations alone. *Cooper v. Sullivan*, 880 F.2d 1152, 1156 (9th Cir. 1989). Non-exertional limitations are unrelated to strength and include "mental, sensory, postural, manipulative, and environmental limitations." *Id*. The exertional requirements of work are classified as sedentary, light, medium, heavy and very heavy. 20 C.F.R. §§ 404.1567, 416.967.

Once the RFC is determined, the fourth step asks whether the claimant can perform his or her past relevant work; at this step the claimant also has the burden of proving he or she is unable to perform past relevant work.

At the fifth step in the analysis, the burden shifts to the Commissioner to prove that the claimant, based on his or her age, education, work experience, and residual functional capacity, can perform other substantial and gainful work existing in the regional or national economy. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner can satisfy this fifth step burden by either (1) applying the Medical-Vocational Guidelines (the "Grids") found at 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00, or (2) taking the testimony of a Vocational Expert ("VE"). *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). However, the Commissioner cannot rely upon the Grids and must use a VE where the claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the claimant's ability to perform the full range of sedentary, light, or medium work. *Id*.

If the answer to any of the questions in the five-step analysis establishes the claimant is or is not disabled, the evaluation ends. 20 C.F.R. §§ 404.1520(a), 416.920(a);

*see also Bowen v. Yuckert*, 482 U.S. at 140.

In the decision denying benefits, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. [AR at 25.] While the ALJ found that Plaintiff suffers from the severe impairments, he determined that Plaintiff's impairments did not meet or equal one of the impairments in the Listings. [AR at 25.] In assessing Plaintiff's RFC, the ALJ found that she was mildly impaired in the ability to interact with co-workers, supervisors, and the public, mildly impaired in the ability to complete a normal workweek without interruption, mildly-to-moderately impaired in the ability to respond appropriately to work pressures in a usual work setting, moderately impaired in the ability to understand, remember, and carry out detailed instructions, moderately impaired in the ability to make simple work-related decisions, moderately impaired in the ability to respond appropriately to work pressures in a usual work setting, and moderately impaired in the ability to maintain attention and concentration for extended periods. [AR at 23.] Although the ALJ found that Plaintiff was not capable of performing her past relevant work as a security guard, the ALJ concluded that Plaintiff retained the capacity to adjust to work that exists in significant numbers in the national economy. [AR at 22]; 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00.

**C.    Analysis of Disputed Issues**

Plaintiff asserts that the ALJ erred by: (1) rejecting the opinions of three of her examining physicians; and (2) failing to give proper weight to lay witness testimony. The Commissioner disagrees.

        1.    Examining Physicians

An ALJ may disregard a examining physician's opinion whether or not that opinion is contradicted. *Andrews*, 53 F.3d at 1041 (ALJ may credit opinion of nontreating source based on independent clinical findings over treating physician's opinion)(citing *Magallanes*, 881 F.2d at 751). If the opinion of an examining physician is contradicted, and the opinion of a non-treating source is based on independent clinical findings that differ from those of the examining physician, the opinion of the non-treating

1 source may itself be substantial evidence to support rejection of the examining
2 physician's opinion. *Id.* It is solely the province of the ALJ to resolve the conflict. *Id.*;
3 *Magallanes*, 881 F.2d at 750 (holding that "[t]he ALJ is responsible for determining
4 credibility and resolving conflicts in medical testimony").

Plaintiff was examined by four doctors for mental impairments: Rosa Colonna, Ph.D., Ernest Bagner, M.D., Nathan Lavid, M.D., and Sohini Parikh, M.D. [JS at 4-6, 9-10.] These doctors had varying opinions regarding the degree of Plaintiff's mental impairments. Plaintiff asserts that the ALJ rejected the opinions of Drs. Colonna, Lavid, and Parikh without stating adequate reasons for doing so. Contrary to Plaintiff's argument, the record reveals the ALJ properly relied on the opinions of both Dr. Bagner and Dr. Colonna in evaluating her mental impairment.

Dr. Bagner conducted a complete psychiatric evaluation of Plaintiff in August 2003. [AR at 277-80.] During the evaluation, Dr. Bagner interviewed Plaintiff, administered a mental status examination, and reviewed the reports of Dr. Parikh and Dr. Lavid. [AR at 277-79.] Dr. Bagner diagnosed Plaintiff with a depressive disorder, NOS and polysubstance abuse, in remission. [AR at 279.] He assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 74.[1/] [AR at 279.] Dr. Bagner concluded that Plaintiff would have "no limitations completing simple tasks," "zero to mild limitations maintaining concentration and attention and completing complex tasks," "mild limitations completing a normal work week without interruption," mild limitations "interacting with supervisors, peers and the public," and "mild to moderate limitations handling normal stresses at work." [AR at 275-76, 279.]

---

[1/] The The GAF scale is a "hypothetical continuum of mental health-illness" used to determine "psychological, social, and occupational functioning." Diagnostic and Statistical Manual of Mental Disorders (4th ed.) ("DSM-IV") at 32. The GAF scale goes from 0-90. The relevant scores for this case are 71-80--no more than slight impairment in social and occupational functioning, 61-70--mild symptoms or some difficulty with social and occupational functioning, 51-60--moderate symptoms or moderate difficulty with social and occupational functioning, and 31-40--some impairment in reality testing or communication or major impairment in several areas such as work, family relations, and judgment.

Page 6

After conducting a complete psychological evaluation of Plaintiff in July 2003, Dr. Colonna diagnosed Plaintiff with a psychotic disorder, NOS and polysubstance dependence, in remission per self-report. [AR at 269-74.] Dr. Colonna assessed Plaintiff with a GAF score of 55, and found that Plaintiff would have "moderate" limitations in the ability to understand, remember and carry out detailed instructions, respond appropriately to work pressures in a usual work setting, make simple work-related decisions. [AR at 267-68, 272-73.] Dr. Colonna found that Plaintiff had only "slight" restrictions in the ability to understand, remember, and carry out simple instructions, make judgments on simple work-related decisions, interact appropriately with the public, supervisors and co-workers, and respond appropriately to changes in a routine work setting. [AR at 267-68.] Dr. Colonna also found that Plaintiff's ability to make simple work-related decisions was moderately impaired. [AR at 273.]

Dr. Lavid and Dr. Parikh assessed Plaintiff with more significant limitations. [AR at 190-94, 231-36.] In March 2002, Dr. Lavid diagnosed Plaintiff with schizophrenia and assessed Plaintiff with a GAF score of 35. [AR at 193.] Although Plaintiff's mental status examination revealed no evidence of cognitive deficits, Dr. Lavid concluded that Plaintiff was not capable of maintaining interaction with peers without distraction or emotional outbursts, could not handle complex tasks, and would be distracted by psychotic symptoms that affect her ability to function. [AR at 193.] In October 2002, Dr. Parikh diagnosed Plaintiff with schizophrenia-paranoia and assessed Plaintiff with a GAF score of 60. [AR at 235.] He concluded that Plaintiff "might have some impairment in the ability to reason and make social, occupational, and personal adjustments because of her paranoia and depression," would not be able to "interact appropriately with coworkers because of paranoia," "would not be able to respond appropriately to the usual work settings in such matters as attendance," and "would have a hard time adjusting to changes in the work routine." [AR at 236-37.]

The ALJ reviewed the opinions of Dr. Lavid and Dr. Parikh in the Decision, and rejected both of them. [AR at 20-22.] Instead, the ALJ relied on the opinions of Dr.

Bagner and Dr. Colonna in assessing Plaintiff's mental impairments. [AR at 21-23.] Specifically, the ALJ found that Plaintiff was mildly impaired in the ability to interact with co-workers, supervisors, and the public, mildly impaired in the ability to complete a normal workweek without interruption, mildly-to-moderately impaired in the ability to respond appropriately to work pressures in a usual work setting, moderately impaired in the ability to understand, remember, and carry out detailed instructions, moderately impaired in the ability to make simple work-related decisions, moderately impaired in the ability to respond appropriately to work pressures in a usual work setting, and moderately impaired in the ability to maintain attention and concentration for extended periods. [AR at 23.] Because the opinions of Dr. Bagner and Dr. Colonna were based on independent clinical findings, the ALJ was allowed to resolve the dispute in the medical evidence and credit their opinions over the findings of Dr. Lavid and Dr. Parikh. *See Andrews*, 53 F.3d at 1041.

The ALJ also provided specific, legitimate reasons to support rejection of the opinions of Dr. Lavid and Dr. Parkih. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). For example, the ALJ noted Dr. Lavid's evaluation of Plaintiff's mental impairment was inconsistent with her unremarkable performance on her mental status examination. [AR 22, 192]; *see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (explaining that the ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). The ALJ also noted the opinions of Drs. Lavid and Parikh appeared to be based on Plaintiff's subjective complaints, which the ALJ properly discounted. [AR at 22-24.] It is well settled that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan v. Commissioner of Social Security*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Thus, the ALJ provided sufficient reasons for rejecting the opinions of Drs. Lavid and Parikh.

Plaintiff counters that the ALJ failed to give proper weight to Dr. Colonna's

opinion. [JS at 4-5.] Plaintiff contends that Dr. Colonna opined that Plaintiff could not perform work in a competitive work environment without special accommodations. In support of this argument, Plaintiff asserts that Dr. Colonna reported that she "may be able to withstand the pressures and duties of a low stress supportive environment and or a job that is isolative 'with the assistance of medical management, a day treatment program, compliance with medication, and individual psychotherapy.'" [JS at 5 (quoting AR at 273).] The ALJ's assessment of Plaintiff's residual functional capacity sufficiently addressed Dr. Colonna's findings regarding her work-related limitations. [AR at 23.] Moreover, the ALJ properly relied on the findings and opinion of Dr. Bagner, who did not find that Plaintiff's ability to work was conditioned upon any special accommodations, except as stated in his report and discussed above. [AR at 21-23, 279]; *see Andrews*, 53 F.3d at 1041.

Plaintiff further argues that the ALJ improperly rejected an initial intake assessment completed by a mental health professional at Long Beach Mental Health ("LBMH") in November 2001. [JS at 6, 23, 128-32.] The assessment reveals that Plaintiff was diagnosed with major depression. [AR at 132.] Findings were also made regarding Plaintiff's insight, judgment, mood, affect, general fund of knowledge, and ability to perform serial 7's. [AR at 131.] The ALJ stated that the LBMH assessment was not entitled to any significant weight because it was made without the benefit of treatment and did not consider Plaintiff's drug use. [AR at 23.] Although Plaintiff's marijuana use was addressed in the assessment, any error was inconsequential because the findings made in the LBMH assessment are not inconsistent with the ALJ's assessment of Plaintiff's residual functional capacity. *See Curry*, 925 F.2d at 1131 (harmless error rule applies to review of administrative decisions regarding disability). Furthermore, the ALJ's assessment of Plaintiff's mental condition was supported by the opinions of Drs. Bagner and Colonna.

/ / /

2. <u>Lay Witness Testimony</u>

Plaintiff asserts that the ALJ improperly rejected the testimony of her mother, Vernada Andrus, and her friend, Deangeleka Biggers. [JS at 10-13; AR at 44-53.] Generally, lay witness testimony should not be ignored without comment by the ALJ. *Dodrill v. Shalala,* 12 F.3d 915, 919 (9th Cir. 1993). If an ALJ wishes to discount lay witness testimony, he is required to "give reasons that are germane to each witness." *Id.* Here, the ALJ rejected the testimony of Ms. Andrus and Ms. Biggers, noting that their statements did not support Plaintiff's allegations. [AR at 24.] In essence, the ALJ found that the witnesses' descriptions of Plaintiff's depression and other characteristics added little to her claim of disability. [AR at 24.] Although the ALJ did not address every aspect of these witnesses' testimony, he had no obligation to do so. *Dodrill*, 12 F.3d at 919. To the extent the lay witness testimony suggested that Plaintiff was disabled, it was properly rejected because it was contradicted by the objective medical evidence. [AR at 23, 46, 267-80]; *see Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)(holding that an ALJ's failure to discuss lay testimony did not require reversal because the medical evidence supported the ALJ's decision that the plaintiff was not disabled).

## IV. CONCLUSION

Accordingly, the Court finds the ALJ's determination of non-disability is free of legal error and supported by substantial evidence in the record. Therefore, Plaintiff's request for an order directing the payment of benefits or remanding this case for further proceedings is DENIED, and the Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is GRANTED. The clerk shall enter judgment, close the file and terminate all pending motions.

DATED: April 18, 2006           /s/ Arthur Nakazato
                                ARTHUR NAKAZATO
                                UNITED STATES MAGISTRATE JUDGE